UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBORAH L. LOGAN, | ) | 1:04-CV-5638 AWI SMS HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| GLORIA A. HENRY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

On July 22, 2002, Petitioner was convicted in the Kings County Superior Court by guilty plea to petty theft with a prior in violation of Cal. Penal Code § 666. See Exhibit B, Respondent's Answer to the Petition (hereinafter "Answer"). She further admitted having suffered two prior convictions for robbery within the meaning of California's Three Strikes law. Id. On August 22, 2002, Petitioner was sentenced to serve an indeterminate term of twenty-five years to life in state prison. Id.

Petitioner appealed her conviction to the California Court of Appeals, Fifth Appellate District

Case 1:04-cv-05638-AWI-SMS   Document 12   Filed 11/01/06   Page 2 of 15

1  (hereinafter "5th DCA"). See Exhibit A, Answer. On December 9, 2003, the 5th DCA affirmed the
2  judgment. See Exhibit B, Answer.

3      Petitioner then filed a petition for review before the California Supreme Court. See
4  Exhibit C, Answer. On February 24, 2004, the petition was summarily denied without comment or
5  citation to authority. Id.

6      On April 29, 2004, Petitioner filed the instant federal petition for writ of habeas corpus. The
7  petition raises the following five grounds for relief: 1) "Is a sentence of 25 years to life for petty theft
8  disproportionately harsh punishment in violation of the California Constitution?"[1]; 2) "Was
9  [Petitioner] arbitrarily denied a state-created right to a proportionate sentence, and did the state court
10  of appeal unreasonably apply clearly established United States Supreme Court law in rejecting her
11  claim?"; 3) "Was [Petitioner] arbitrarily denied a state-created right to a [*Romero*] determination by
12  the sentencing court?"; 4) "Whether [Petitioner]s Thrid [sic] Strike sentence is cruel and unusual
13  punishment in violation of the Eighth Amendment?" and 5) "Does the strict causation test
14  announced in People v. Bruner apply only to claims for duplicative presentence credit?" Respondent
15  filed an answer to the petition on December 30, 2004. Petitioner did not file a traverse.

16                     **FACTUAL BACKGROUND**

17      The Court hereby adopted the factual summary set forth by the 5th DCA in its opinion dated
18  December 9, 2003[2]:

19        On February 19, 2002, police responded to Save Mart following a report that a
20  shoplifter was in custody. A Save Mart employee saw [Petitioner] place several DVD's (digital versatile discs) in a shopping cart and then place them in the waistband of her pants.
21  Once [Petitioner] exited the store, the employee contacted [Petitioner] outside and asked her to come back into the store. [Petitioner] got into a pickup truck and started to back up. A
22  citizen observed what happened and parked his vehicle behind [Petitioner's], blocking her exit. The citizen and the employee then removed [Petitioner] from her vehicle, although
23  [Petitioner] continued to resist.

See Exhibit C, Answer.
24
25

---

27  [1] The Court notes that Ground One was dismissed on September 10, 2004, for failure to state a cognizable federal claim.

28  [2] The appellate court adopted the probation officer's summary of the offense, since Petitioner had pled guilty.

U.S. District Court
E. D. California   cd   2

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

1  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
2  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537
3  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Procedural Default

Respondent contends Petitioner has procedurally defaulted Grounds Two, Three, and Five by failing to properly present the federal constitutional basis of the claims to the California Supreme Court, because they were not first fairly presented to the 5th DCA. Respondent contends Petitioner would violate state procedural rules by now attempting to return to the state courts to fairly present the claims.

Respondent's arguments are persuasive. In order to exhaust a federal habeas claim, the petitioner must have properly raised it on every level of direct review, including the state intermediate court of appeal. Casey v. Moore, 386 F.3d 896, 918 (9th Cir. 2004) (Where a petitioner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them."); see also Reese v. Baldwin, 282 F.3d 1184, 1193 (9th Cir. 2002) ("For if the federal claim was not presented to the [intermediate state appellate court], the [state supreme court] need not have considered that federal claim no matter how explicitly raised to it."), *reversed on other grounds*, Baldwin v. Reese, 541 U.S. 27 (2004). Rule 28(c)(1) of the California Rules of Court provides: "As a policy matter, on petition for review the Supreme Court normally will not consider an issue that the petitioner failed to timely raise in the Court of Appeal."

Here, Petitioner did not fairly present the federal basis of Grounds Two, Three and Five to the appellate court. She first presented the federal basis of those claims in her petition for review to the California Supreme Court. Therefore, Grounds Two, Three and Five were not properly raised to the California Supreme Court and were not properly exhausted. If Petitioner were to return to state court to fully exhaust these claims, under California's procedural rules it would now be too late. See In re Robbins, 18 Cal.4th 770, 7800 (1998) (requiring timely presentation of claims); In re Dixon, 41 Cal.2d 756, 759 (1953) (disallowing review of claims in a habeas action which should have been raised on direct appeal). Because Petitioner's claims are unexhausted and no state remedies are available, the claims are procedurally defaulted. See Johnson v. Lewis, 929 F.2d 460, 463 (9th Cir.

1991) ("If a federal constitutional claim can no longer be raised because of a failure to follow the prescribed procedure for presenting such an issue, however, the claim is procedurally barred and the petition must be denied."), *citing* Murray v. Carrier, 477 U.S. 478, 485 (1986).

A federal court will not review claims in a petition for writ of habeas corpus which are procedurally defaulted if the state law ground barring review is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Here, the state procedural grounds are both independent and adequate. See Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Protsman v. Pliler, 318 F.Supp.2d 1004, 1006-09 (S.D.Cal.2004). If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park, 202 F.3d at 1150.

Petitioner does not contend that the state law ground was inadequate to support the state court judgment or that the state law ground was not independent of federal law. Furthermore, Petitioner does not allege there was cause for her procedural default or that failure to consider the claims will result in a fundamental miscarriage of justice. Accordingly, Petitioner has procedurally defaulted Grounds Two, Three and Five, and they must be dismissed. Nevertheless, the Court will address the claims as they are also meritless.

**IV.  Review of Petitioner's Claims**

   **A.  Ground Two**

Petitioner claims she was arbitrarily denied a state-created right to a proportionate sentence in violation of the Fourteenth Amendment. Respondent argues the state court ruling comported with state law and was not arbitrary and capricious so as to violate her due process rights.

Generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). In addition,

federal courts are bound by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). However, a protected liberty interest may be created by state law in certain circumstances. <u>Clemons v. Mississippi</u>, 494 U.S. 738, 746 (1990); <u>Bonin v. Calderon</u>, 59 F.3d 815, 842 (9th Cir. 1995). "In order to create a liberty interest protected by due process, the state law must contain: (1) 'substantive predicates' governing official decisionmaking, and (2) 'explicitly mandatory language' specifying the outcome that must be reached if the substantive predicates have been met." <u>Bonin</u>, at 842 , *citing* <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 462-63 (1989). In addition, the violation of state law results in a due process violation only if the sentence is arbitrary or capricious. <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992).

In reviewing Petitioner's claim that her sentence violated California's protection against cruel and unusual punishment, the 5th DCA found no violation under state law:

> In assessing [Petitioner's] claim under the state Constitution, we note first and foremost that it is the Legislature's function to define crime and prescribe punishment. The judiciary may not interfere in this process unless the statute prescribes a penalty so severe in relation to the crime that it violates the constitutional prohibition against cruel or unusual punishment. (*People v. Dillon* (1983) 34 Cal.3d 441, 478; *In re Lynch* (1972) 8 Cal.3d 410, 423-24.) The basic test is whether the punishment is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*Dillon*, at p. 478, quoting *Lynch*, at p. 424, fn. omitted.) In determining whether a particular punishment is cruel or unusual, courts examine the nature of the particular offense and offender, the penalty imposed in the same jurisdiction for other offenses, and the punishment imposed in other jurisdictions for the same offense. (*Lynch*, at pp. 425-427; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 199.) [Petitioner] must overcome a considerable burden to show that her sentence was disproportionate to her level of culpability. (*People v. Wingo* (1975) 14 Cal.3d 169, 174; *People v. Weddle*, (1991) 1 Cal.App.4th 1190, 1196-1197.)
>
> [Petitioner] has failed to meet this lofty burden. Regarding the nature of the offense and the offender, [Petitioner] attempts to minimize her current conduct - shoplifting four DVD movies from a store - with excuses. According to [Petitioner], her husband was suffering from a terminal illness, "[a]ll [he] wanted to do was watch movies," and she spent the money he gave her to buy the DVD's on her cocaine addiction. [Petitioner] also fails to recognize that her current conviction of petty theft was elevated to a felony because of a prior theft conviction.
>
> [Petitioner] also has a significant criminal history, as was detailed above, dating back to 1982. She has two strike convictions for robbery, one of which involved the use of a firearm. She has a total of six convictions for petty theft and has been convicted of commercial burglary twice. [Petitioner] has been convicted of passing bad checks, perjury and welfare fraud, and has numerous Vehicle Code infractions. She has used numerous aliases, birth dates and Social Security numbers over the years. [Petitioner] performed poorly on probation and parole, and was on parole at the time of the current offense.

With respect to the second *Lynch* factor, [Petitioner] states, "[A] life maximum sentence for a petty theft, albeit recidivism, should be deemed excessive in comparison to the lesser sentences given for far more serious first offenses, such as crimes of extreme violence and cruelty, even murder." The second *Lynch* factor requires comparison between the punishment for the current crime and punishment for more serious crimes. However,

> this step is inapposite to three strikes sentencing because it is a defendant's 'recidivism in combination with [her] current crimes that places [her] under the three strikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [Petitioner's] punishment for [her] "offense," which includes [her] recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.' [Citation.] (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1328.)

The final *Lynch* factor requires comparison between the penalty for this crime in this state with the penalty for similar crimes in other states. Once again, we are comparing punishment for [Petitioner]'s recidivist behavior. *People v. Ayon* (1996) 46 Cal.App.4th 385, overruled on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585, 593, noted that California's three strikes sentencing scheme is part of a nationwide pattern calling for more severe sentences for recidivist behavior, with many states providing life sentences for repeat offenders, and several providing life sentences without the possibility of parole. (*Ayon*, at p. 400.)

[Petitioner] provides a comprehensive review of the law in other states and contends that no other state provides a harsher punishment where the current offense is a "minor felony," even in cases where the offender has several prior felony convictions. However, even if we accept [Petitioner's] comparison at face value, it does not automatically follow that the sentence constitutes cruel and unusual punishment. First, if the punishment exceeds that in other states, it is only a consideration in determining whether the sentence is cruel or unusual. (*In re Lynch, supra*, 8 Cal.3d at p. 427.) Second, "the needs and concerns of a particular state may induce it to treat certain crimes or particular repeat offenders more severely than any other state. Nothing in the prohibition against cruel or unusual punishment per se disables a state from responding to changed social conditions and increasing the severity with which it treats its recidivist felons." (*People v. Cooper* (1996) 43 Cal.App.4th 815, 827.)

After considering these factors under *Lynch*, we conclude [Petitioner's] sentence does not offend the constitutional prohibition against cruel or unusual punishment found in article I, section 17 of the California Constitution.

See pp. 4-7, Exhibit B, Answer.

In rejecting Petitioner's claim, the appellate court correctly identified the proportionality test provided under California law. See In re Lynch, 8 Cal.3d 410, 423-24 (1972). The appellate court reviewed each component in the Lynch test and concluded Petitioner's sentence was not "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." Id., at 424. The state court's application of state law is presumptively correct, and there is no evidence from which to conclude Petitioner's sentence was

8

arbitrary and capricious. Further, as noted by Respondent, Petitioner's sentence was dictated by statute. See Cal. Penal Code § 1170.12(c)(2)(A)(ii). Accordingly, Petitioner was not denied a state-created right, and her claim should be rejected.

### B. Ground Three

Petitioner next claims she was arbitrarily denied the state-created right to have the sentencing court make an informed decision in determining whether to strike a prior conviction in the interests of justice pursuant to Cal. Penal Code § 1385. Petitioner states the trial court mistakenly believed she would be eligible for parole after 20 years; however, under California law the mandatory minimum was 25 years. Citing to Hicks v. Oklahoma, 447 U.S. 343 (1980), Petitioner claims the arbitrary state court decision deprived her of her due process rights guaranteed under the Fourteenth Amendment. Respondent contends the claim fails because it does not present a cognizable federal question and because it is without merit.

In rejecting Petitioner's claim, the appellate court stated:

> A third strike sentence of 25 year to life requires service of a mandatory term of 25 years, which cannot be reduced by prison conduct credits. (*In re Cervera* (2001) 24 Cal.4th 1073, 1076.) [Petitioner] contends the trial court ruled under an erroneous view that she could earn credits to reduce her minimum term by 20 percent, and that she could be paroled after serving only 20 years. At both the change of plea hearing and at sentencing, the trial court mentioned that [Petitioner] would be limited to a 20 percent reduction of her sentence through conduct credits. As argued by [Petitioner], the sentencing court's misconception about the length of the mandatory minimum term [Petitioner] must serve under the three strikes law interfered with the court's ability to exercise "informed discretion" in determining whether or not to grant *Romero* relief.
>
> It is well established that criminal defendants are entitled to sentencing decisions made by a trial court exercising "informed discretion." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)
>
> "A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." (*Ibid*.)
>
> However, it is not true that every time a sentencing court bases its sentencing determination on "a factual premise which later turns out to be erroneous," the defendant is entitled to a new sentencing hearing. (*People v. Ruiz*, (1975) 14 Cal.3d 163, 168.)
>
> Here, the trial court mistakenly believed [Petitioner] would earn conduct credits on her indeterminate term of 25 years to life. The court's mistake, however, did not have reference to [Petitioner]'s "legal status." (*People v. Ruiz, supra*, 14 Cal.3d at p. 168.) The trial court carefully weighed its sentencing decision. It is not likely the trial court would have stricken [Petitioner]'s prior convictions had the trial court not misunderstood the correct conduct credits [Petitioner] could earn. A remand to the lower court is not required.

1  See p. 8, Exhibit B, Answer.

2  Respondent argues the claim does not present a federal question because there is no state-
3  created right to have the sentencing court consider dismissing one of Petitioner's prior strike
4  convictions. To the extent that Petitioner claims she has been deprived of a state-created right to
5  dismissal of a prior, Respondent is correct because there is no guaranteed state right to dismissal of a
6  prior. Rather, the sentencing court has discretion and is under no obligation to make a ruling under
7  Cal. Penal Code § 1385. See People v. Carmony, 33 Cal.4th 367, 375 (2004). However, to the extent
8  Petitioner complains she was denied the state-created right to have the sentencing court make an
9  "informed decision," Petitioner does raise a cognizable claim. As stated above by the appellate court,
10  under California law "[i]t is well established that criminal defendants are entitled to sentencing
11  decisions made by a trial court exercising "informed discretion." See People v. Belmontes, 34 Cal.3d
12  335, 348, fn. 8 (1983). Therefore, Petitioner cannot be arbitrarily denied an exercise of informed
13  discretion by the sentencing court.

14  Respondent further argues the claim is not cognizable, because California provides an
15  opportunity for the appellate court to cure the deprivation of the state-created right. Respondent's
16  argument is persuasive. "If a state, however, permits its appellate courts to cure the deprivation of a
17  state-created right and the deprivation is cured, then the state-created right cannot form the basis of a
18  liberty interest." Arreguin v. Prunty, 208 F.3d 835, 837 (9th Cir.2000), overruled on other grounds
19  by United States v. Buckland, 289 F.3d 558, 566 (9th Cir.2002) (en banc). In this case, the 5th DCA
20  concluded that the trial court would not have stricken the prior conviction had it understood the
21  correct manner in which Petitioner could earn conduct credits. The 5th DCA decided remand was not
22  necessary. If the appellate court had concluded there was a reasonable likelihood the prior would
23  have been stricken, it could have remanded to the sentencing court for resentencing. At best,
24  therefore, Petitioner can claim a qualified liberty interest. Arreguin, 208 F.3d at 837.

25  In any case, the claim is without merit. As set forth above, the appellate court acknowledged
26  that Petitioner has a right to an informed decision. The appellate court also acknowledged the trial
27  court misunderstood Petitioner's parole eligibility date; Petitioner would not be eligible until she
28  served 25 years, rather than 20 years. Nevertheless, the court concluded the sentencing court would

1  not have altered the sentence by striking a prior even if the court properly understood the amount of
2  custody credits Petitioner could earn. However, whether Petitioner would become eligible for parole
3  after 20 years or 25 years was a minor consideration compared with Petitioner's significant history of
4  recidivism. Therefore, the appellate court's decision was reasonable and not arbitrary or capricious.
5  The claim should be denied.

### C.  Ground Four

7  Petitioner claims her third strike sentence violates the Eighth Amendment prohibition against
8  cruel and unusual punishment.

9  A criminal sentence that is not proportionate to the crime for which a defendant is convicted
10 may indeed violate the Eighth Amendment.  However, two decisions by the United States Supreme
11 Court require that Petitioner's claim be denied.

12 In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court discussed
13 proportionality review under the Eighth Amendment and held that the only clearly established
14 governing legal principle is that a "gross disproportionality" review applies to criminal sentences for
15 a term of years, but the precise contours of that principle are "unclear applicable only in the
16 'exceedingly rare' and 'extreme' case." Id., at 72.  Andrade casts doubt on almost any non-death
17 penalty petitioner's ability to demonstrate that a state court's rejection of the Eight Amendment
18 claim prior to March 2003, was contrary to or an unreasonable application of clearly established
19 federal law.

20 In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court upheld a sentence of 25 years
21 to life for a recidivist convicted most recently of grand theft.  Ewing further explained that the three
22 strikes law was not constitutionally infirm.  Id., at 29-30.

23 In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing
24 the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his
25 long *history of felony recidivism*." Id. at 29 (emphasis added).  The Court noted that "any other
26 approach would fail to accord proper deference to the policy judgments that find expression in the
27 legislature's choice of sanctions." Id. In imposing a Three Strikes sentence on a recidivist criminal,
28 the Court recognized the state's interest in dealing "in a harsher manner with those who by repeated

criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Id., *citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980). Accordingly, any proportionality review must take this interest into account. Id.

Petitioner's sentence of 25 years to life does not raise an inference of gross disproportionality to her crimes. Petitioner received a sentence of 25 years to life with the possibility of parole for having been convicted of felony petty theft with a prior and for having two prior serious felony convictions. As noted by the California Court of Appeal, Petitioner has a significant criminal history including "two strike convictions for robbery, one of which involved the use of a firearm, . . . a total of six convictions for petty theft, . . . . [two convictions] of commercial burglary, . . . . [convictions for] passing bad checks, perjury and welfare fraud, and has numerous Vehicle Code infractions." See p. 5, Exhibit B, Answer. The appellate court further noted Petitioner had used numerous aliases, birth dates and Social Security numbers, had previously performed poorly on probation and parole, and was on parole at the time of the underlying offense. Id. During sentencing, the court made the following factual finding:

> [Petitioner] has an extensive history of violations of probation, violations of parole, failures to appear, escape. She is a professional criminal living on society as would a predator or parasite and contributes nothing, and in the past has engaged in violence in conjunction with her criminal activities and would not be a suitable candidate for a grant of probation. [Petitioner] over the years has used at least a dozen disparate false names, again consistent with her criminal life-style.

(RT[3] 80.)

In light of these facts, Petitioner's sentence does not violate Eighth Amendment principles. Petitioner is precisely the recidivist criminal for which California's Three Strikes law was designed to protect society against. Thus, the state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The claim should be rejected.

**D.  Ground Five**

In her final claim for relief, Petitioner contends she was arbitrarily denied presentence credits. Petitioner escaped from pretrial custody and later was apprehended. The sentencing court awarded

---

[3] "RT" refers to the Reporter's Transcript.

her credits for time in custody prior to the escape; however, Petitioner was not given credit for the time she was in custody following her re-apprehension, because her post-escape custody was attributable in part to her escape which in turn had resulted in a revocation of parole.

In reviewing this claim, the 5th DCA stated:

> [Petitioner] contends the trial court erred in awarding her 62 days' presentence credit. She claims she was entitled, under section 2900.5, to additional time – from her arrest on May 14, 2002, through August 22, 2002 – when she was in custody after her arrest for escaping from jail.
>
> [Petitioner] was arrested on February 19, 2002, for the theft of the DVD's. On April 1, 2002, while awaiting trial, she escaped from jail and a warrant was issued for her arrest. [Petitioner] was not apprehended until May 14, 2002, and she was then charged with the unrelated crime of escape from the county jail.
>
> Section 2900.5 governs the circumstances in which custody credits will be awarded. Subdivision (a) of that section provides that "[i]n all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail, . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." Subdivision (b) of section 2900.5 further states that, "[f]or the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted."
>
> In *People v. Bruner* (1995) 9 Cal.4th 1178, 1194-95, the California Supreme Court discussed application of section 2900.5 subdivision (b), holding, consistent with two prior cases – *In re Rojas* (1979) 23 Cal.3d 152 and *In re Joyner* (1989) 48 Cal.3d 487 – that
>
>> "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint. Accordingly, when one seeks credit upon a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was 'a' basis for the revocation matter as well." (*Bruner*, at pp. 1193-1194.)
>
> Under the "strict causation" standard, no credit is allowed "unless the *conduct* leading to the sentence was the *true and only unavoidable basis* for the earlier custody." (*Id*. at p. 1192, italics in original.) In adopting the "strict causation" standard previously utilized in *Rojas* and *Joyner*, the Supreme Court expressly overruled *In re Atiles* (1983) 33 Cal.3d 805, which had held that duplicate credit is due whenever the conduct at issue was "a" basis for the presentence custody, even if not the only basis. (*People v. Bruner, supra*, at p. 1194.)
>
> In *Bruner*, the defendant was arrested for three parole violations: absconding from parole supervision, theft of a credit card, and cocaine use. During the search incident to the defendant's arrest, officers found cocaine on his person and he was cited for possession and released on his own recognizance. (*People v. Bruner, supra*, 9 Cal.4th at p. 1181.) However, the defendant remained in custody pursuant to a parole hold and, on the basis of the three earlier parole violations as well as the cocaine possession, pleaded guilty, and was sentenced to 16 months in prison. (*Ibid*.) Our Supreme Court held that because the defendant's presentence custody stemmed from multiple, unrelated incidents of misconduct, he could not establish that "but for" the criminal charge he would have been free. Accordingly, his

> presentence custody could not be credited against a subsequent term of incarceration. (*Id*. at p. 1192.)
>
> [Petitioner] claims she is entitled to credit during the period from May 14, 2002, until August 22, 2002, when she was sentenced in the instant offense. According to [Petitioner], the record does not establish that her parole was revoked as a result of the escape, which resulted in an award for time served against her parole term. She also claims the confinement period in question was for a period attributable to the instant offense, because "but for" the theft, she would not have been in custody at all.
>
> To receive credit for the time served after her arrest for escaping from jail, [Petitioner] has the burden under *Bruner* to show that the sole cause of her confinement was her offense of the theft of the DVD's. This [Petitioner] has failed to do.
>
> The record shows that [Petitioner] was arrested for escaping from jail while awaiting charges in the instant theft case and she was charged in a separate matter. The record contains no further information regarding that charge in accordance with [Petitioner's] plea agreement in the instant case. The dismissal of the escape charge was an inducement for [Petitioner] to plead guilty in the theft of the DVD's. The probation report indicates [Petitioner] was serving a term of parole when she escaped from custody. Probation reports are presumed correct, and if any part is untrue, the defendant must object at sentencing. (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 184.) In addition, when the probation officer stated, at sentencing on the DVD theft conviction, that [Petitioner's] parole was revoked as a result of the escape, [Petitioner's] counsel did not dispute that fact.
>
> [Petitioner] cannot show that she would have been free during the period in question of presentence custody but for the same custody that led to her instant conviction and sentence for the theft. As such, she is not entitled to any additional days of presentence credit.

See pp. 9-11, Exhibit B, Answer.

As discussed by the 5th DCA, the sentencing court's application of section 2900.5 was appropriate and consistent with California law as set forth in People v. Bruner, 9 Cal.4th 1178 (1995). Accordingly, Petitioner was not arbitrarily denied presentence credits. The claim should be denied.

**RECOMMENDATION**

Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within ten (10) court days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's

1 Findings and Recommendation." Replies to the objections shall be served and filed within ten (10)
2 <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then
3 review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised
4 that failure to file objections within the specified time may waive the right to appeal the District
5 Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7 IT IS SO ORDERED.

8 **Dated:   October 31, 2006**          /s/ **Sandra M. Snyder**
   icido3                                UNITED STATES MAGISTRATE JUDGE